**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA**

BLAKE WILLIAMS,

    Plaintiff

v.

HEATHER HASENMYER, individually,
TIFFANY WOODFAULK, individually,
and
DR. BRUCE MEYER, individually,

    Defendants.

Case No. 6:22-cv-00174-RAW

## SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, Blake Williams, and for his causes of action against Defendants Heather Hasenmyer, individually, Tiffany Woodfaulk, individually, and Dr. Bruce Meyer, individually, hereby alleges the following:

1.    Plaintiff Blake Williams is a resident of Cleveland County, Oklahoma, but was incarcerated and housed by the Department of Corrections at the Jess Dunn Correctional Center at the time of the incident hereinafter described.

2.    Defendant Heather Hasenmyer was, at all times relevant hereto, a medical provider at the Jess Dunn facility acting under the color of state law.

3.    Defendant Hasenmyer engaged in the conduct complained of under color of law and within the scope of her employment as a medical provider at the Jess Dunn Correctional Center.

4.     Defendant Woodfaulk was, at all times relevant hereto, a medical provider and/or medical coordinator at the Jess Dunn Correctional Center.

5.     At the time of the incident, Defendant Woodfaulk engaged in the conduct complained of under color of law and within the scope of her employment as a medical provider for the Jess Dunn Correctional Center.

6.     Defendant Meyer was, at all times relevant hereto, a medical provider and/or medical coordinator at the Jess Dunn Correctional Center.

7.     At the time of the incident, Defendant Meyer engaged in the conduct complained of under color of law and within the scope of his employment and/or independent contractor as a medical provider for the Jess Dunn Correctional Center.

## **JURISDICTION AND VENUE**

Plaintiff incorporates all previous allegations and statements and further alleges the following:

8.     This action arises from intentional and/or gross negligence or reckless acts that occurred in Muskogee County, Oklahoma.

9.     At all material times herein, the Defendants, Heather Hasenmyer, Tiffany Woodfaulk and Dr. Bruce Meyer, were acting within the scope of their employment and authority as medical providers and/or coordinators of the Jess Dunn Correctional Center.

10.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the parties hereto, jurisdiction over the subject matter hereof, and venue is proper.

## FACTUAL BACKGROUND

Plaintiff further incorporates all previous allegations and statements and further alleges the following:

11. On or about November 6, 2020, Plaintiff Blake Williams injured his arm while performing work on behalf of the facility.

12. On that same date, Plaintiff Williams filled out a request for health services and stated "I snapped the tendon in my left arm doing work in visitation."

13. Defendant Hasenmyer, upon information and belief, was assigned to be the attending physician and/or provider over Plaintiff Williams' injury on or about that same date.

14. On or about November 6, 2020, Defendant Hasenmyer acknowledged that an MRI was necessary to evaluate the extent of the injury.

15. On or about November 12, 2020, Plaintiff Williams again had to fill out another request for health services stating "I ripped my bicep and I am in a lot of pain." Additionally, the pain medication for his arm injury had already run out and had not been renewed.

16. Records indicated that the provider, who upon information and belief is Defendant Hasenmyer, was provided this second request on or about November 13, 2020.

17. On or about November 6, 2020, Defendant Woodfaulk was also involved as a medical provider to coordinate the care of Plaintiff Williams.

18. Defendant Woodfaulk was responsible for scheduling Plaintiff Williams's outside provider visits on November 6, 2020 and December 1, 2020.

19. A torn bicep is a serious medical need that requires timely surgical intervention.

20. On or about December 2, 2020, nearly one month after the injury, Plaintiff Williams was finally transferred to St. John Medical Center where an MRI confirmed that Plaintiff Williams had a torn bicep tendon with retraction.

21. On or about December 2, 2020, Defendant Hasenmyer subjectively acknowledged and wrote in her notes that further delay regarding the care of Plaintiff Williams' bicep could cause an adverse outcome.

22. An adverse outcome regarding a delay in evaluating and repairing a torn bicep can include permanent and irreversible damage to the individual's arm. This adverse possibility is known to medical providers, including the known providers who had the duty of coordinating and ensuring appropriate and timely care, which record indicate are Defendants Hasenmyer, Woodfaulk and Meyer.

23. The records do not indicate any effort by Defendants Hasenmyer or Defendant Woodfaulk to insure the MRI was completed prior to December 2, 2022.

24. On December 8, 2020, after another six-day delay, Dr. Richard Greisman reviewed Plaintiff Williams' MRI results and issued the following report:

:/12/2022 09:45 T-05:00 TO:+1

**LINDSAY MUNICIPAL HOSPITAL**
**Lindsay, Oklahoma**
TELEMEDICINE VISIT

Patient's Name: WILLIAMS BLAKE
Date of Birth:
Date of Encounter: 12/08/2020                                  Sex: M
DOC No:                                               Account No:
DOC Facility: JDCC                               Medical Record No:

---

The patient is a 39-year-old male with a distal left biceps rupture that occurred around November 6, 2020, regarding the left upper extremity. A complete tear with retraction is noted. The notations are difficult including the radiology report, however, if the patient is noted to have a distal biceps tendon rupture, this is a surgically treated condition or the patient will have permanent loss of function. This type of injury is time sensitive and really needs to be addressed within six weeks. As the tendon retracts, surgical intervention becomes more difficult.

Secondary to the noted delay secondary to COVID and the dates for evaluation that may be planned with further delay to any surgical intervention, unless the patient could be surgically reconstructed next week, he will require referral to the University of Oklahoma Upper Extremity Specialist as delayed treatment frequently requires interpositional grafting that is not able to be performed at our institution.

If it is available for him to be transferred to our facility next week, I would want to make sure the patient has been educated in the surgical nature of this difficulty. He may be offered acceptance, as well as operative intervention. He has to understand he would require signing a consent that states he understands risks involved with surgery, risks such as bleeding, infection, neurovascular damage, failure of surgery and need for further surgical intervention, continued discomfort, future degenerative change, findings that might not be benefitted by surgical intervention and need for further surgery. He would have to understand implants would be utilized to stabilize the tendon.

I spent approximately five minutes reviewing this patient's records.

Electronically signed by RICHARD GREISMAN, MD            12/15/20 15:29

DD: 12/09/20 RAG
DT: 12/09/20 DST

LMH MR 000001

25.  Dr. Greisman's report highlighted the serious medical need, the reasons why immediate intervention was necessary and required, and that Plaintiff Williams must be transferred within one week, or if that was not possible, transferred to an upper extremity specialist.

26. This report was transferred to the Jess Dunn facility and confirmed received by the facility.

27. Defendant Hasenmyer sought approval from Dr. Meyer, after the facility received the report, who was responsible for the outside referral of Plaintiff to an orthopedic specialist.

28. Defendant Meyer's role as a medical provider, upon receipt and review of Dr. Greisman's report, would have subjective knowledge of Plaintiff's serious medical need and need for intervention within the week.

29. Dr. Greisman's report would have been reviewed and/or able to be reviewed by providers Meyer, Hasenmyer and Woodfaulk.

30. Defendants Hasenmyer, Woodfaulk, and Meyer were all responsible for, and participated in the process of, referring Plaintiff Williams to, and scheduling Plaintiff Williams with, an outside provider.

31. Defendants Hasenmyer, Woodfaulk, and Meyer, because of their responsibilities for scheduling Plaintiff Williams for, and sending Plaintiff Williams to, an outside provider, could have hastened Plaintiff's Williams's treatment by an outside provider.[1]

---

[1] Importantly, Plaintiff Williams is not required to show that Defendants could have, by themselves, ordered an immediate transfer. It is enough that Plaintiff Williams demonstrates that Defendants could have done something to speed up the transfer process. *See* **Error! Main Document Only.***Garrett v. Stratman*, 254 F.3d 946, 956 (10th Cir. 2001) (upholding a district court's denial of summary judgment to a correctional employee that "'could have done something to speed up the transfer process,' notwithstanding evidence that he could not have unilaterally ordered an immediate transfer.").

32. The records do not indicate that Defendants Hasenmyer, Woodfaulk or Meyer made any effort to coordinate transfer to Dr. Greisman's facility for the required surgical intervention as recommended within one week of the report.

33. This further delay by the Defendants was either deliberately indifferent, intentional and/or grossly negligent, as all of the Defendants would have been aware of the serious medical need either upon injury or upon receipt and review of Dr. Greisman's report.

34. Plaintiff Williams was not transferred within the week to Dr. Greisman or any orthopedic specialist.

35. After failing to transfer Plaintiff Williams to Dr. Greisman, per his report, Plaintiff Williams was not sent to a University of Oklahoma upper extremity specialist as Dr. Greisman recommended if transfer within one week was not possible.

36. Defendants Hasenmyer, Woodfaulk and Meyer instead, individually or in coordination with each other, further delayed Plaintiff Williams' care until December 21, 2020, when Mr. Williams was sent to an outside provider who was not qualified to perform necessary repairs after the specified time period as indicated in Dr. Greisman's report.

37. The outside provider, as anticipated by Dr. Greisman's report, indicated that surgery was too risky due to the extended delay.

38. The outside provider indicated in their December 21, 2020 report, that Plaintiff Williams' injury had an obvious "Popeye sign" which would have been

observable by Defendant Hasenmyer and any other provider at the Jess Dunn facility.[2] This obvious deformity would have been observable prior to him receiving his MRI on December 2, 2020 and would have indicated the severity of the serious medical need.

39.     The outside provider indicated that Plaintiff Williams already had weakness and deformity in the arm.

40.     The outside provider also noted that Plaintiff Williams complained of constant pain, discomfort, soreness, and swelling in his left arm.

41.     After receiving this report, at no point during the entirety of Plaintiff Williams's incarceration, did any of the Defendants attempt to coordinate or schedule Plaintiff Williams with the University of Oklahoma upper extremity specialist as the orthopedic specialist instructed them in his December 8th report.

42.     On December 31, 2020, Mr. Williams once again complained of severe pain in his left arm and stated that he had not been given pain medication.[3]

43.     For the remainder of Plaintiff Williams's incarceration, Plaintiff Williams experienced severe pain and was disabled.

---

[2] Notably, knowledge of a substantial risk of harm may be demonstrated where the risk was obvious. *See Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020) (internal quotations omitted) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

[3] In the context of delayed treatment, a delay in medical care constitutes a violation of the Eighth Amendment only where "'the delay resulted in substantial harm.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm may either be a (1) permanent physical injury or (2) "an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." *Id.* (internal quotations omitted). Plaintiff Williams experienced pain for almost two months because of his torn bicep, lack of pain medication, and delay in treatment. The Tenth Circuit, under similar circumstances, has determined that this satisfies the objective component of the deliberate indifference test. *See Gray v. Sorrels*, 744 F. App'x 563, 569 (10th Cir. 2018) (finding pain resulting from a delay in treatment of swollen knees, without pain medication, satisfies the objective component). If that were not enough, Plaintiff Williams also alleges a permanent physical injury in that the delay resulted in the loss of the full functioning of his left arm.

44. All of Defendants knew of Plaintiff Williams's severe pain and disability through their roles in Plaintiff Williams's referrals and medical care.

45. Due to the Defendants' individual and/or coordinated delay, Plaintiff has suffered severe pain and permanent, life-changing injuries as a result.

46. At no point was Plaintiff Williams advised that he should be sent to an upper extremity specialist at OU Health Sciences Center after the one week window.

47. Nor was Plaintiff Williams advised that surgical intervention/referral to an upper extremity specialist at OU Health Sciences Center could have repaired his torn bicep prior to his release from his incarceration.

48. At no point, however, did Plaintiff Williams consent to not being transferred to an outside provider.

49. Since the end of his incarceration, Plaintiff Williams has now undergone surgery for his torn bicep, with the upper extremity specialist identified in Dr. Greisman's report, but has not been informed whether that surgery, which was unnecessarily delayed by Defendants' actions and/or inactions, will fully address his disability or remedy his pain. Regardless, however, Plaintiff Williams experienced additional and unnecessary pain and disability during his incarceration and after his release as a result of Defendants' delay in medical care.

## FIRST CAUSE OF ACTION

## CRUEL AND UNUSUAL PUNISHMENT

Plaintiff hereby re-alleges and incorporates previous allegations and statements and further alleges:

50.     Plaintiff Williams had a right under the Eighth Amendment of the United States Constitution to be free from any cruel and unusual punishment. The Defendants violated Mr. Williams right under the Eighth Amendment to be free from cruel and unusual punishment by their above-described actions consisting of their deliberate indifference to a serious medical need and by subjecting him to conditions that caused him extreme pain and suffering and compounded his medical problems during his delay in treatment, which said delay has resulted in loss of a fully functioning left arm.

51.     Plaintiff Williams's constitutional rights to not be subjected to cruel and unusual punishment under the circumstances and Plaintiff Williams's constitutional right to be free from deliberate indifference to his serious medical needs were also clearly established. It is also clearly established that Defendants' delay in medical care, which resulted in substantial harm to Plaintiff Williams, was an Eight Amendment violation.

52.     As a direct and proximate result of Defendants' acts and/or omissions, as described herein, the Defendants, herein above named, while acting under color of state law, deprived Plaintiff Williams of his federal constitutional right, in violation of the Eighth Amendment, 42 U.S.C. § 1983. As a further direct and proximate result of Defendants' acts and/or omissions, as described herein, Mr. Williams suffered violations of his rights, privileges and immunities under the Constitution of the United States and suffered excruciating pain and suffering, all to his damage in an amount in excess of Seventy-five Thousand Dollars ($75,000.00), including incurred expenses and loss of income damages.

53.     The Defendants, and each of them, have in regard to this matter exhibited a willful and deliberate disregard for the rights and safety of Plaintiff Williams. Accordingly,

Plaintiff is entitled to punitive damages against all of the individual Defendants in an amount of Seventy-five Thousand Dollars ($75,000.00).

## DEMAND FOR JURY TRIAL

54. Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

55. Plaintiff reserves the right to plead further upon completion of discovery, to state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, jointly and severally as follows:

A. Defendants individually and in concert committed acts and omissions that constituted violations of the Eighth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983;

B. Awarding judgment in favor of Plaintiff against the Defendants and each of them jointly and severally in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) as for compensatory damages;

C. Awarding judgment in favor of the Plaintiff against the Defendants and each of them jointly and severally in an amount of Seventy-five Thousand Dollars ($75,000.00) and for punitive damages;

D. Awarding Plaintiff all applicable pre-judgment and post-judgment interest;

E. Awarding Plaintiff attorney fees and costs pursuant to 42 U.S.C. § 1983 and § 1988.

Respectfully submitted,
WALSH & FRANSEEN

 s/ Derek S. Franseen
Derek S. Franseen, OBA No. 30557
200 E. 10th Street Plaza
Edmond, OK 73034
(405) 843-7600 - Telephone
(405) 606-7050 - Facsimile
dfranseen@walshlawok.com