## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

BLAKE WILLIAMS,          )
                               )
         Plaintiff,         )
                               )
v.                            )      **Case No. CIV-22-174-GLJ**
                               )
HEATHER HASENMYER, individually; )
TIFFANY WOODFAULK, individually; )
and DR. BRUCE MEYER, individually, )
                               )
         Defendants.       )

## OPINION AND ORDER

This case arises out of Plaintiff's incarceration at the Jess Dunn Correctional Center in Taft, Oklahoma. Plaintiff Blake Williams sued individuals Heather Hasenmyer, Tiffany Woodfaulk, and Dr. Bruce Meyer alleging a claim of cruel and unusual punishment arising out of deliberate indifference to a serious medical need, pursuant to 42 U.S.C. § 1983. Defendants now seek dismissal of Plaintiff's Second Amended Complaint. For the reasons set forth below, the Court finds that Defendants['] Motion to Dismiss and Brief in Support [Docket No. 32] is hereby GRANTED IN PART and DENIED IN PART.

### I. Procedural History

Plaintiff filed this case on June 8, 2022. *See* Docket Nos. 1-2. Plaintiff moved to amend his Complaint on October 20, 2022, which was granted, and he filed the First Amended Complaint on December 8, 2022. *See* Docket Nos. 19, 23-24. Defendants Hasenmyer and Woodfaulk moved to dismiss, and the Court invited Plaintiff to file a Second Amended Complaint. *See* Docket Nos. 27-28. Plaintiff then filed his Second

Amended Complaint, which is the subject of the present motion to dismiss.  In the Second Amended Complaint, Plaintiff's sole claim is raised pursuant to § 1983 as to all Defendants, alleging cruel and unusual punishment demonstrated by deliberate indifference to a serious medical need.

## II. Second Amended Complaint Allegations

Plaintiff alleges in his Second Amended Complaint that he was incarcerated at the Jess Dunn Correctional Center ("JDCC") in Taft, Oklahoma, during the relevant time period in this case.  Docket No. 29, p. 1, ¶ 1.  Defendants Hasenmyer, Woodfaulk, and Dr. Meyer were all medical providers at JDCC at the same time, and Plaintiff alleges they all acted under color of law and within the scope of their employment while at JDCC.  *Id.*, pp. 1-2, ¶¶ 2-7, 9.

Plaintiff alleges he injured his left bicep on November 6, 2020, while performing work at JDCC, requesting health services that same day.  *Id.*, p. 3, ¶¶11-12.  Hasenmyer saw him that day, and "acknowledged" that an MRI would be necessary to evaluate the extent of his injury.  *Id.*, ¶¶ 13-14.  Plaintiff again requested health services on November 12, 2020 because his pain medication had run out and he was in pain, and Hasenmyer filled this request.  *Id.*, ¶¶ 15-16.  On both November 6, 2020, and December 1, 2020, Woodfaulk scheduled outside provider appointments for Plaintiff.  *Id.*, p. 3-4, ¶¶ 17-18.  Plaintiff ultimately received an MRI on December 2, 2020.  *Id.*, p. 4, ¶ 20.  Hasenmyer's notes from

that same day reflect that any further delay of treatment could cause an adverse outcome, which would include permanent and irreversible damage. *Id.*, ¶¶ 21-22.

Plaintiff's Second Amended Complaint indicates that Dr. Richard Greisman (not a named Defendant) reviewed the MRI six days later, on December 8, 2022. *Id.*, ¶ 24. The Second Amended Complaint includes a screenshot of a purported Telemedicine Visit, with an encounter date of December 8, 2022, indicating it was not electronically signed until December 15, 2020. *Id.*, p. 5, ¶ 24. The screenshot indicates Plaintiff had a complete tear with refraction and notes that this injury was time sensitive and needed to be addressed within six weeks of injury or surgical intervention would become more difficult. *Id.*, pp. 4-5, ¶ 24. Six weeks from the date of injury was December 18, 2020. Dr. Greisman sent his report to JDCC, where receipt was confirmed, although Plaintiff does not allege which JDCC employee received it nor on what date. *Id.*, p. 6, ¶ 26. After the facility received the report, Hasenmyer sought Defendant Dr. Meyer's approval for referring Plaintiff to an outside orthopedic specialist. *Id.*, p. 6, ¶¶ 26-27.

Plaintiff alleges that all three Defendants were responsible for and participated in referring Plaintiff to and scheduling him with outside providers. Additionally, he alleges that, in light of their responsibilities for scheduling and referrals, they could have hastened his treatment with an outside provider. *Id.*, ¶¶ 30-31. He asserts that he never refused consent to be transferred to an outside provider. *Id.*, p. 9, ¶ 48. Plaintiff alleges Defendants did not make any effort to coordinate his transfer for surgical intervention within one week of the report and he in fact was not transferred within one week, *i.e.*, within the six-week

window prescribed by Dr. Geisman, and that such failure constitutes deliberate indifference to a serious medical need. *Id.*, p. 7, ¶¶ 32-34, 41.

Plaintiff alleges all three Defendants, individually or in coordination, delayed his care until December 21, 2020, when he was sent to an outside provider who was not qualified to perform the necessary procedure(s) outside the six-week window and stated the surgery was "too risky due to the extended delay." *Id.*, ¶¶ 36-37. On December 21, 2020, the outside provider noted an "obvious" deformity of the left bicep in a report, and Plaintiff alleges this would have been observable prior to his MRI and further demonstrated the severity of his serious medical need. *Id.*, pp. 7-8 ¶ 38.

On December 31, 2020, Plaintiff again complained of pain and that he had not been given pain medication. *Id.*, p. 8, ¶ 42. Additionally, he alleges he was in severe pain and disabled for the remainder of his incarceration. *Id.*, ¶ 43. The end date for Plaintiff's incarceration is not alleged, although he alleges that all three Defendants knew of his pain and disability, and that he suffered severe pain and permanent, life-changing injuries due to the delay they caused either together or separately. *Id.*, p. 9, ¶¶ 44-45. Plaintiff underwent surgery for his torn bicep after his incarceration ended, but "has not been informed whether that surgery which was unnecessarily delayed . . . will fully address his disability or remedy his pain." *Id.*, ¶ 49. Regardless, he alleges he experienced "additional an unnecessary pain and disability due to his incarceration and after his release as a result of Defendants' delay" in his medical care. *Id.*

As to his specific cause of action, Plaintiff alleges that Defendants violated his right to be free from cruel and unusual punishment and to be free from deliberate indifference

to a serious medical need.  He contends that "Defendants' delay in medical care" caused him substantial harm.  *Id*, p. 10, ¶¶ 50-51.  He asserts that their deliberate indifference subjected him to conditions causing extreme pain, compounded his medical problems during the delay in treatment, and that the delay resulted in the loss of a fully functioning arm.  *Id.*

## Analysis

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement.'  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 556, 557, 570).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements

of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

Additionally, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show – when taken as true – the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Importantly, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citing *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992)).

**Eighth Amendment Claim Requirements.** For claims pursuant to § 1983, "a plaintiff must 1) allege a violation of a right secured by the Constitution or laws of the United States and 2) demonstrate that the alleged deprivation was committed by a person acting under color of law." *Jackson v. Workman*, 2012 WL 984294, at *4 (E.D. Okla. Mar. 22, 2012) (citing *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009)). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509

U.S. 25, 31 (1993).  Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and **medical care**, and must 'take reasonable measures to guaranty the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (emphasis added) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  Allegations of failure to provide medical care "must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)." *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (quoting *Martin v. Board of County Commissioners of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990)); *see also Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985) ("Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs.") (citing *Estelle*, 429 U.S. 97).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation and internal quotation marks omitted).  "Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable." *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000).  "Prison personnel 'may thus be liable under § 1983 for indifference manifested in their response to the prisoner's needs or by intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.'" *Gray v. Sorrels*, 744 Fed. Appx. 563, 567-568 (10th Cir. 2018) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (ellipses and internal quotation marks omitted)).

"These claims include both an objective and a subjective component." *Gray*, 744

Fed. Appx. at 568; *see also Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("The test for deliberate indifference is both objective and subjective.") (citing *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)). "Our cases recognize two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. . . . The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. As such, "the Tenth Circuit has recognized that conduct constituting deliberate indifference may arise in the form of 'a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition.'" *Welsh v. Bishop*, 2015 WL 1064155, at *4 (D. Colo. March 9, 2015) (quoting *Self v. Crum*, 439 F.3d 1227, 1231-1232 (10th Cir. 2006) ("A claim is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious.")).

   ***Objective Component Requirements.*** The Tenth Circuit has explained that the objective component is based on the harm claimed by the Plaintiff, and "whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause.'" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "Once the prisoner selects the harm, however, the focus of the objective prong should be solely on whether that harm is sufficiently serious." *Mata*, 427 F.3d at 753. A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 296 (1991)). "For

the objective component of a failure-to-treat claim, the inquiry is whether the prisoner's 'medical need is sufficiently serious[, that is,] if it is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Gray*, 744 Fed. Appx. at 568 (quoting *Estate of Booker*, 745 F.3d at 430 (ellipsis and internal quotation marks omitted)); *see also Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) ("A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal quotation marks omitted).  "When a prisoner alleges that a delay in treatment caused him pain, if 'the pain experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test.'" *Gray*, 744 Fed. Appx. at 568 (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks omitted)).  "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm"; this "requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Hardeman v. Smith*, 2018 WL 1528160, at *8 (E.D. Okla. Mar. 28, 2018) (quotations omitted) (citing, *inter alia*, *Oxendine v. Kaplan*, 241 F.3d 1272, 1276, 1278 (10th Cir. 2001)).

  ***Subjective Component Requirements.***  The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*; *see also Martinez*, 563 F.3d at 1089 ("'[T]he prisoner must show that the defendants

knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measure to abate it.'") (quoting *Callahan*, 471 F.3d at 1159).  Additionally, "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of h[is] condition.  Even a brief delay may be unconstitutional."  *Mata*, 427 F.3d at 755 (collecting cases).

"For the subjective component for both types of claim, the prisoner must present 'evidence of the prison official's culpable state of mind. He must show that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Gray*, 744 Fed. Appx. at 568 (quoting *Estate of Booker*, 745 F.3d at 430).  This is "akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must 'consciously disregard' a substantial risk of serious harm.' And '[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.' The fact that a serious medical need was 'obvious' could be evidence of deliberate indifference, although a 'prison official may show that the obvious escaped him' and avoid liability." *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837, 839, 842-843 & n. 8).

Put another way, "'the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Martinez*, 563 F.3d at 1089 (quoting *Callahan*, 471 F.3d at 1159).  "Defendants will not be entitled to qualified immunity if the symptoms displayed by Plaintiff were obvious enough to warrant a finding that Defendants knew of the risk of a serious medical

condition but disregarded that risk." *Marquez v. Board of County Commissioners Eddy County*, 2012 WL 12895017, at *5 (D. N.M. Dec. 3, 2012). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. . . .[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so." *Farmer*, 511 U.S. at 842-844.

Accordingly, "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of his condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755 (collecting cases); *Winrow v. Stell*, 2015 WL 3645702, at *7 (W.D. Okla. March 5, 2015) ("Denying or delaying a prisoner's access to medical professionals capable of assessing or treating the prisoner's condition can establish the subjective component, particularly when unnecessary pain or a worsened condition results."). However, "[m]ere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference." *Casanova v. Ulibarri*, 2011 WL 13157058, at *6 (D.N.M. Sept. 1, 2011) (internal citations omitted). Therefore, "[t]he question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Martinez*, 563 F.3d at 1089 (quoting *Mata*, 427 F.3d at 753); *see also Whiteman v. El Paso Criminal Justice Ctr.*, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011) ("[A] general awareness of *the potential* for harm is not enough; there must be a connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed.") (emphasis added) (citing *Martinez*, 563 F.3d at 1089 n.8).

***Personal Participation Requirement.***  Additionally, *"*[p]ersonal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-1263 (10th Cir. 1976) (citations omitted).   "Plaintiff must show that a defendant personally participated in the alleged civil rights violation."  *Green v. Hininger*, 2013 WL 5329288, at *2 (E.D. Okla. Sept. 23, 2013).  Indeed, "[a]n assertion of collective responsibility fails to adequately allege a claim for relief against a specific defendant." *Dawson v. Sedgwick Cnty. Det. Ctr.*, 2023 WL 2213342, at *4 (D. Kan. Feb. 24, 2023).

Defendants contend Plaintiff fails to plead an Eighth Amendment violation in that he fails to sufficiently address the objective standard for deliberate indifference based on a delay in medical treatment, and that a disagreement with diagnosis or treatment is insufficient to establish the subjective prong.  Furthermore, they contend Plaintiff fails to allege personal participation with regard to both Dr. Meyer and Woodfaulk.  Defendants contend that because they did not violate a constitutional right, they are entitled to qualified immunity.  In response, Plaintiff asserts that his immediate pain satisfies the objective prong because he was not provided pain medication for nearly two months, and likewise did not receive the necessary medical treatment his condition required, resulting in the loss of a fully functioning arm.  Plaintiff also contends the subjective prong is met because he was not transferred to an outside provider despite Dr. Greisman's assessment, when he was transferred two weeks later the surgery had become too risky and then required an upper extremity specialist.  However, Plaintiff was never transferred to an upper extremity specialist.  He alleges Defendants knew of his need for treatment and acknowledged the necessity, but delayed his MRI for a month, delayed his transfer for two weeks, and never

transferred him to an upper extremity specialist when that became the only option (due to the delay in treatment). Additionally, he contends that the deformity to his left arm was visible and presented an obvious risk. He also asserts that this case is not comparable to cases where an inmate disagreed on the type of treatment the inmate receives; rather, he asserts they all agreed he needed this treatment but simply did not effectuate it.

Woodfaulk. Plaintiff's allegations as to Woodfaulk are the most sparse. He alleges Woodfaulk was a medical provider and/or medical coordinator at JDCC, who at all times was acting within the scope of her employment. *Id.*, p. 2, ¶¶ 4-5, 9. He alleges she was "involved as a medical provider to coordinate" his care and that she was responsible for scheduling his outside provider visits on November 6, 2020 and December 1, 2020. *Id.*, pp. 3-4, ¶¶ 17-18, 30. He further asserts she had a duty to coordinate and insure he got appropriate care and that she could have hastened his care, but that she made no effort to coordinate an MRI prior to December 2, 2020. *Id.*, pp. 4, 6, ¶¶ 22-23, 31. Furthermore, he alleges she made no effort to coordinate his transfer within a week of Dr. Greisman's report and that she (or another provider) delayed his care until December 21, 2020, and that she did not coordinate or schedule him with an upper extremity specialist after the six-week window expired. *Id.*, pp. 7-8, ¶¶ 32, 41.

To avoid dismissal, a complaint must specifically set out the actions allegedly taken by *each defendant* so as to establish that *each defendant* engaged in a constitutional violation. *See Gray*, 744 Fed. Appx. at 568 (finding that "allegation[s] against a group of defendants is too conclusory to establish personal participation on the part of any one of them"); *cf. Brown v. Montoya*, 662 F.3d 1152, 1164-1166 (10th Cir. 2011) (holding that

generalized allegations concerning "Defendants" were insufficient to establish a defendant's personal participation in the alleged constitutional violation). As the District of Colorado noted in *Blackburn*, Plaintiff's Second Amended Complaint "does not contain factual allegations to permit a factfinder to conclude [Woodfaulk] dictated the course of treatment (or lack thereof) for Plaintiff." *Blackburn v. Baxter*, 2021 WL 11449161, at *11 (D. Colo. Nov. 2, 2021), *report and recommendation adopted*, 2021 WL 11449162 (D. Colo. Dec. 10, 2021). Plaintiff alleges Woodfaulk was a scheduler or coordinator, but makes no allegation that she was responsible for directing his course of treatment or even that she directly treated him. These allegations are insufficient for either the objective or subjective prong. *See Gray*, 744 Fed. Appx. at 570 ("Mr. Gray's deliberate-indifference claims against Ms. Robinson based on lack of medical treatment are limited to alleging that she was an assistant to Dr. Marlar and that she and Dr. Marlar did an initial evaluation. These facts fail to state a plausible claim for either the objective or the subjective component of deliberate indifference.") (internal quotation omitted).

Allegations of Pain. Additionally, Plaintiff alleges in his *response* that he was not provided pain medication for nearly two months, but the Second Amended Complaint does not make that allegation. He only alleges he made a health services request on November 12, 2020, which he believes was sent to Defendant Hasenmyer; that he complained of his pain to the outside provider; that all Defendants knew of his pain; and that he again complained of pain on December 31, 2020. Docket No. 29, pp. 3-8, ¶¶ 15-16, 40, 42, 44. Plaintiff alleges "Defendants" were aware of his pain, but he does not allege that any of them denied him pain medication or specify at all how long he went without pain

medication. And, determinative as to any claim for delay in providing pain medication, Plaintiff does not allege to whom he made the complaints of pain or who was responsible for denying his requests. Plaintiff thus attributes this delay in pain medication to no particular Defendant and accordingly fails the requirement that he must allege personal participation of one (or more) Defendant. *See Dawson*, 2023 WL 2213342, at *4 ("[a]n assertion of collective responsibility fails to adequately allege a claim for relief against a specific defendant."). Thus, Plaintiff fails to allege a plausible claim against Woodfaulk.

***Remaining Defendants.*** Unlike with Woodfaulk, Plaintiff has shown his medical condition is sufficiently serious as to Hasenmyer and Dr. Meyer. Hasenmyer determined he needed additional testing in the form of an MRI, and then Hasenmyer and Meyers agreed he needed surgical treatment. Plaintiff alleges he was in considerable pain and that the delay could cause permanent damage. This satisfies the objective component. *See Watson v. Corr. Corp. of Am.*, 2018 WL 1474895, at *3 (E.D. Okla. Mar. 26, 2018) ("Once the facility physician examined Plaintiff, it was determined that he needed additional testing and then surgical treatment. Therefore, the objective component of deliberate indifference has been met."); *see also Blackburn*, 2021 WL 11449161, at *8 ("Taking Plaintiff's allegations as true as it must at this juncture, this court concludes that Plaintiff's alleged back injury and the associated pain purportedly caused by the delay obtaining an MRI, properly reading it, and securing appropriate treatment constitute a sufficiently serious medical need for which a lay person would recognize the need for a doctor's attention."), *report and recommendation adopted*, 2021 WL 11449162 (D. Colo. Dec. 10, 2021); *Martin v. Bliss*, 2016 WL 7046766, at *4 (E.D. Okla. Dec. 2, 2016) ("A medical need is considered

sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'") (quoting *Al-Turki*, 762 F.3d at 1192-1193); *Denison v. Corr. Health Partners*, 2014 WL 1673126, at *11 (D. Colo. Apr. 28, 2014) ("Plaintiff alleges that an MRI was recommended by Dr. Koons and approved for the treatment of Plaintiff's condition. Thus, the Court agrees with Magistrate Judge Mix and Judge Blackburn that such alleged condition constitutes a sufficiently serious condition.").  The Court now turns to the subjective component with regard to these two Defendants.

*Hasenmyer*.  Plaintiff alleges Hasenmyer was a medical provider at JDCC, and that she was the attending provider on November 6, 2020, when he was injured.  Docket No. 29, pp. 1,3, ¶¶ 2, 13.  She knew an MRI was necessary, but did not make any effort to ensure it was completed prior to December 2, 2020.  *Id.*, pp. 3-4, ¶¶ 14, 23.  On November 13, Hasenmyer received a request for health services from Plaintiff, at which time he reported pain and that he had already run out of his pain medication.  *Id.*, ¶ 15-16.  Notably, Plaintiff alleges his injury was observable by Hasenmyer prior to receiving an MRI.  *Id*, p. 8, ¶ 38.  On the day of his MRI, December 2, 2020, Hasenmyer noted that further delay of care for Plaintiff could cause an adverse outcome.  *Id.*, p. 4, ¶ 21.  Plaintiff alleges he was never informed of Dr. Greisman's recommendation that he be sent to an upper extremity specialist.  *Id.*, p. 9, ¶¶ 46-47.  Although no dates are provided in the Second Amended Complaint, Plaintiff alleges that, after receiving Dr. Greisman's report, Hasenmyer sought Dr. Meyer's approval for an outside referral to an orthopedic specialist.  *Id.*, p. 6, ¶¶ 27-28.

Plaintiff alleges both that Hasenmyer was responsible for referring Plaintiff and scheduling him with an outside provider, ¶ 30, and that it was Meyer's responsibility to make the outside referral, ¶ 27. Moreover, Plaintiff alleges that Hasenmyer did not attempt to coordinate his transfer from JDCC within a week of Dr. Greisman's report, and that she (or another provider) delayed his care until December 21, 2020, and compounded this problem by sending him to a provider who was not qualified to perform the necessary treatment. *Id.*, p. 7, ¶¶ 36-37. Plaintiff additionally alleges that on December 31, 2020, he again complained of pain and that he had not been given pain medication. As discussed above, however, he does not allege who he complained to or how long he had been without pain medication.

Plaintiff specifically contends in his response that the one-month delay in obtaining the MRI, and the failure to transfer him to an outside specialist within one week or at all, meet the subjective component here. He asserts Defendants, including Hasenmyer, knew of and disregarded the risk to him. Furthermore, he notes that this is not a disagreement with the treatment proscribed, but rather a failure to treat him when all parties were aware of the appropriate course of treatment – both in obtaining the MRI and in transferring him to an outside provider and specialist.

First, the Court finds that Hasenmyer was not deliberately indifferent with regard to the 26-day time frame between Plaintiff's injury and obtaining the MRI. Plaintiff makes it clear that he does not disagree with this treatment, *see Oxendine*, 241 F.3d at 1277 n.7 ("[I]t is true that a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation[.]"), but that he makes an allegation

of harm arising from the delay itself.  However, "[a] delay in medical care only violates the Eighth Amendment if the plaintiff can show the delay caused substantial harm." *Braxton v. Wyandotte Cnty. Sheriff's Dept.*, 206 Fed. Appx. 791, 793 (10th Cir. 2006) (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff does not sufficiently allege that the 26-day delay in obtaining an MRI caused any additional or substantial harm.  Hasenmyer saw the injury and agreed it needed further testing, ordering and ultimately securing one for him within 26 days.  Plaintiff alleges no facts that this caused him further harm, and Plaintiff does not allege Hasenmyer believed an adverse outcome might occur in the time between the injury and the MRI.  This is in contrast to after she received the MRI report, discussed below.  *See id.* ("Although Mr. Braxton may have experienced a modest delay in treatment, he has not identified any substantial harm *resulting from the delay in treatment.*"); *see also Cary v. Hickenlooper*, 673 Fed. Appx. 870, 875-876 (10th Cir. 2016) ("Mr. Cary makes only conclusory and unsupported allegations of harm from any delay in his receiving the MRI."); *Francisco v. Mohamad*, 2021 WL 4220627, at *4 (S.D. Cal. Sept. 16, 2021) ("There are no factual allegations in the Complaint which plausibly allege the three-month delay in receiving an MRI caused injury."); *Cacho v. Johns*, 2017 WL 3427964, at *5 (D. Nev. Aug. 9, 2017) ("Plaintiff's belief that he was entitled to swifter treatment is not actionable under the Eighth Amendment, unless the delay in treatment resulted in further harm."), *report and recommendation adopted*, 2017 WL 6596587 (D. Nev. Dec. 22, 2017).

The December 2, 2020 MRI confirmed Plaintiff had a torn bicep with retraction, and the report indicated surgery needed to take place within six weeks of the injury or he

would need to be referred to an upper extremity specialist to surgically treat the injury. Plaintiff alleges he did not receive either of these options and did not undergo surgery until he was released from incarceration.[1]  Plaintiff alleges Hasenmyer knew on December 2, 2020 that further delay in treatment of his injury could result in an adverse outcome. Plaintiff's Second Amended Complaint does not allege when Hasenmyer received and/or reviewed Dr. Greisman's report on the MRI, but it does allege that she knew of a risk of adverse outcome due to delay on the day of the MRI, that she sought Dr. Meyer's approval for an outside referral to a specialist, and that she was either individually or in coordination with others responsible for delaying his transfer to an unqualified outside provider until December 21, 2020.  He alleges she could have hastened this effort, but that she did not, despite knowing the risk of further delay.  Further, he alleges she failed to send him to an upper extremity specialist after the outside provider indicated they could not perform the surgery.  At this stage, these allegations are sufficient to establish the subjective prong as to Hasenmyer in that "the inference could be drawn that a substantial risk of serious harm existed, and that she must also have drawn the inference."  *Gray*, 744 Fed. Appx. at 568; *see also Riddle,* 83 F.3d at 1202 ("A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal quotation marks omitted).  Here, "the need for additional treatment or referral to a medical specialist,"

---

[1] Plaintiff's failure to allege when he was released from incarceration is not fatal here because he clearly alleges he neither received surgery within the six-week time period or with an upper extremity specialist while he was incarcerated.

*Self*, 439 F.3d at 1232, was obvious and known to Hasenmyer. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1142 (10th Cir. 2023) ("The fact that she was later referred for treatment by others does not erase Dr. Myers' failure to act at the time it was obvious Ms. Caddell faced a substantial risk.") (citing *Mata*, 427 F.3d at 756 (discussing that deliberate indifference is determined "*at the time*" a medical professional refuses to treat an individual and that events subsequent to that denial have no bearing whatsoever on that analysis) (emphasis in original).

<u>Dr. Meyer</u>.   Plaintiff likewise alleges that Dr. Meyer was a medical provider and/or medical coordinator at JDCC, who at all times was acting within the scope of his employment. *Id.*, p. 2, ¶¶ 6, 9.  He alleges Dr. Meyer received and reviewed Dr. Greisman's report, would have had knowledge of his serious medical need and need for intervention, and was responsible for the outside referral. *Id.*, p. 6, ¶¶ 27-28.  Plaintiff does not allege *when* Dr. Meyer reviewed the report but asserts he could have hastened Plaintiff's treatment with an outside provider and that he made no effort to coordinate Plaintiff's transfer for surgery within a week of the report, instead initially delaying his care until December 21, 2020, and further failed to refer him to an upper extremity specialist at all once he returned to JDCC. *Id.*, pp. 7-8, ¶¶ 31, 36, 41.

As with Hasenmyer, these allegations are sufficient to establish the subjective prong as to Meyer in that "the inference could be drawn that a substantial risk of serious harm existed, and that []he must also have drawn the inference." *Gray*, 744 Fed. Appx. at 569; *see also Riddle,* 83 F.3d at 1202 ("A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.") (internal quotation marks omitted).   Thus, "the need for additional treatment or referral to a medical specialist," *Self*, 439 F.3d at 1232, was likewise obvious and known to Dr. Meyer.   *See also Lucas*, 58 F.4th at 1142.

**Qualified Immunity.**  Nevertheless, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).   "'In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"   *Brown*, 662 F.3d at 1164 (quoting *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011)).   As discussed above, Plaintiff has sufficiently pled that Hasenmyer and Dr. Meyer violated his Eighth Amendment rights.   However, Plaintiff has not met this requirement as to Woodfaulk and she is therefore entitled to qualified immunity.   The question remaining is whether Hasenmyer and Dr. Meyer are entitled to qualified immunity based on the "clearly established" prong.

"Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct 'by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as [he] maintains.'"   *A.M. v. Holmes*, 830 F.3d 1123,

1135 (10th Cir. 2016) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)). However, "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, it "must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987)). In this Circuit, "[t]he right to custodial medical care is clearly established." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Estelle*, 429 U.S. at 104); *see also Martin*, 2016 WL 7046766, at *4 ("[T]he Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 104 (internal quotations and citations omitted)); *Blackmon v. Sutton*, 734 F.3d 1237, 1245 (10th Cir. 2013) ("By 1997 this court had clearly held that the Eighth Amendment is offended not only by medical professionals who fail to treat, but also by prison officials who assume "gate keeping" authority over prisoner access to medical professionals.").

Even though a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm[,]" *Oxendine*, 241 F.3d at 1276 (quotation omitted), the Tenth Circuit has held "that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett*, 254 F.3d at 950. Here, Plaintiff's Second Amended Complaint sufficiently alleges as to Hasenmyer and Dr. Meyer that Plaintiff had an obvious

need for medical care after the MRI report was produced, and that the failure to timely provide such care was a violation of his clearly established rights. *See, e.g.*, *Sealock*, 218 F.3d at 1211 ("If, however, the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.").

In light of the clearly established right to custodial medical care and the allegations of the First Amended Complaint, taken as true, the Court finds that these allegations sufficient to survive the motion to dismiss and that Hasenmyer and Dr. Meyer are not entitled to qualified immunity. In sum, the Amended Complaint alleges sufficient facts as to Hasenmyer and Dr. Meyer to state a claim for relief as to deliberate indifference to a known medical need by subjecting him to a delay in medical care, in violation of the Eighth Amendment. Dismissal as to Hasemyer and Dr. Meyer is therefore DENIED. However, Defendant's Motion to Dismiss is GRANTED as to Woodfaulk, and she is entitled to qualified immunity.

**CONCLUSION**

Accordingly, the Court finds that the Defendants['] Motion to Dismiss and Brief in Support [Docket No. 32] is DENIED IN PART as to his claims of deliberate indifference to a known medical need by subjecting him to a delay in medical care arising after the MRI was conducted in this case against Defendant's Hasenmyer and Dr. Meyer, and otherwise

GRANTED.  The Court finds that Plaintiff shall not be granted leave to further amend the

Second Amended Complaint.

IT IS SO ORDERED this 20th day of December, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**