IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

BLAKE WILLIAMS,                          )
                                         )
       Plaintiff,                        )
                                         )
v.                                       )     Case No. CIV-22-174-GLJ
                                         )
HEATHER HASENMYER, individually,         )
                                         )
       Defendant.                        )

## OPINION AND ORDER

This case arises out of Plaintiff's incarceration at the Jess Dunn Correctional Center in Taft, Oklahoma. Plaintiff Blake Williams alleges cruel and unusual punishment arising out of deliberate indifference to a serious medical need, pursuant to 42 U.S.C. § 1983. The remaining Defendant, Heather Hasenmyer, seeks summary judgment based on qualified immunity. For the reasons set forth below, the Court finds that Defendant Hasenmyer's Motion for Summary Judgment [Docket No. 80] is hereby GRANTED.

### I. Procedural History

Plaintiff filed this case on June 8, 2022, against Hasenmyer, Dr. Bruce Meyer, Tiffany Woodfaulk, and Tabitha Smith. *See* Docket Nos. 1-2. Plaintiff dismissed Smith on July 15, 2022. *See* Docket No. 10. Plaintiff then filed the First Amended Complaint on December 8, 2022. *See* Docket Nos. 19, 23-24. Defendants Hasenmyer and Woodfaulk moved to dismiss, and the Court invited Plaintiff to file a Second Amended Complaint. *See* Docket Nos. 27-28. Plaintiff then filed his Second Amended Complaint, which sole claim is raised pursuant to § 1983 as to all Defendants, alleging cruel and unusual

punishment demonstrated by deliberate indifference to a serious medical need. Defendants Hasenmyer, Meyer, and Woodfaulk again moved to dismiss and for qualified immunity. The Court granted the motion on December 23, 2023, as to Woodfaulk, but denied it as to Hasenmyer and Meyer. *See* Docket No. 55. Plaintiff then dismissed Meyer on August 27, 2024. *See* Docket No. 69. The sole remaining Defendant, Hasenmyer, moved for summary judgment on March 14, 2025, and the matter is now ripe.

## II. Factual Background

The relevant undisputed facts reflect that Plaintiff was incarcerated at the Jess Dunn Correctional Center ("JDCC") in Taft, Oklahoma, during the relevant time period in this case. Docket No. 80, pp. 12-13, ¶¶ 1-2. Defendant is a Physician Assistant ("PA") working at JDCC during the same time, at all times under color of law and within the scope of her employment. *Id.*, ¶¶ 3-4.

On November 6, 2020, Plaintiff injured his left bicep while moving tables at JDCC and requested health services the same day. *Id.*, ¶¶ 5-6. Defendant examined Plaintiff that day and, *inter alia*, ordered him an MRI as well as pain medication. *Id.*, ¶¶ 7, 9-10. Woodfaulk scheduled Plaintiff's MRI for November 27, 2020, and the physician approved it. *Id.*, ¶¶ 12-14. The November 27th MRI was cancelled by JDCC security due to a security lockdown. *Id.*, p. 14, ¶ 15. Woodfaulk called three providers to reschedule the MRI, and the earliest available was December 2, 2020, and this appointment was kept as scheduled. *Id.*, ¶¶ 16-20. In the meantime, Plaintiff was tested for COVID-19 on

December 1, 2020, and the test returned positive on December 4, resulting in Plaintiff's quarantine from December 4 through December 15. *Id.*, ¶¶ 18-22.

Woodfaulk received and uploaded the MRI results on December 7, 2020, and the results confirmed that Plaintiff had a torn bicep with retraction. *Id.*, ¶ 23. Defendant placed a telehealth consult request that same day, requesting a response within 48 hours and further notifying a nurse at Lindsey Municipal Hospital ("LMH") regarding the consult request and asking that the surgeon develop a treatment plan. An orthopedic surgeon, Dr. Greisman, who routinely provided orthopedic consults for JDCC inmates, reviewed Plaintiff's MRI results on December 9, 2020. He recommended that Plaintiff be scheduled at LMH the following week, and if not at LMH then through the OU medical system. *Id.*, pp. 14-15, ¶¶ 23-30.

Because of Plaintiff's positive COVID results, however, LMH would not schedule Plaintiff the following week. On December 10, 2020, Hasenmyer asked her supervisor, Dr. Meyer, for next steps, and he instructed her to contact the OU clinic to see if they could find a local provider. The earliest the OU Clinic could see Plaintiff was the week of December 21, so Defendant asked Dr. Meyer about other local providers, and he instructed her to try that route. On December 10, Defendant put in a referral request to the Orthopedic Center requesting an urgent evaluation. *Id.*, pp. 16-17, ¶¶ 37-44. Plaintiff disputes that Defendant was making efforts to find a provider who could provide the necessary bicep repair surgery, but doesn't not dispute she made efforts at finding a local provider. Docket No. 83, pp. 9-10, ¶¶ 37-44.

On December 10, 2020, the Orthopedic Center scheduled Plaintiff for December

17, 2020, which was approved by Dr. Meyer. Defendant informed Plaintiff of his appointment, and Plaintiff consented to being referred to a specialist. Docket No. 80, p. 17, ¶¶ 45-48, 50. On December 17, Dr. Blackmon, a foot and ankle specialist, evaluated Plaintiff, reviewed the MRI results, and recommended Plaintiff be seen "ASAP" for surgical repair. *Id.*, p. 19, ¶ 65. Plaintiff was scheduled for an appointment with Dr. Chalkin on December 21, 2020, who evaluated him that day. *Id.*, pp. 19-20, ¶¶ 66, 68. Rather than recommend or schedule Plaintiff for surgery, Dr. Chalkin recommended physical therapy based on his examination, the MRI results, medical history, medical, surgical history, and family history. At that December 21 appointment, Dr. Chalkin described Plaintiff's November 6 injury as occurring "almost three months ago." *Id.*, p. 20, ¶¶ 68-72. Plaintiff asserts Defendant had a duty to review and correct inaccuracies in the medical record. Docket No. 83, pp. 12-13, ¶¶ 73-78. Though the parties dispute who created the paperwork, it appears Dr. Chalkin gleaned the mistaken date of injury from intake paperwork.

Following the appointment with Dr. Chalkin, Defendant was not required to follow up with Plaintiff. Docket No. 80, p. 21, ¶ 85. However, Defendant received Dr. Chalkin's recommendation for physical therapy on December 23, 2020, and scheduled him for physical therapy beginning December 31. Plaintiff was transported for this appointment, but it did not occur due to an issue at the service provider location and his appointment was rescheduled. *Id.*, pp. 21-22, ¶¶ 89, 92. On January 6, 2021, Plaintiff completed paperwork consenting to physical therapy, but ultimately declined his January 25 physical therapy appointment as well as his February 23 eight-week follow-up appointment with Dr.

Chalkin. Defendant was uninvolved in Plaintiff's decisions regarding these appointments. *Id.*, p. 22, ¶¶ 92-98.

During Plaintiff's time at JDCC after November 6, Plaintiff requested medication adjustments twice, on November 12, 2020, and July 8, 2021, and filed no other requests with staff members related to his injury. *Id.*, pp. 22-23, ¶¶ 100-101. Plaintiff was discharged from JDCC August 9, 2021, and filed the present case on June 8, 2022. He underwent a bicep surgical repair on September 6, 2022. *Id.*, p. 23, ¶¶ 102-104 & Docket Nos. 1-2. In 2023, Plaintiff had some loss of strength. Docket No. 83, p. 19, ¶ 36; Docket No. 87, p. 7, ¶ 37.

### III. Applicable Law

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## IV. Analysis

Defendant moves for summary judgment, asserting that she is entitled to qualified immunity as Plaintiff fails to establish a constitutional violation of clearly established law. Plaintiff alleges Defendant's actions constituted deliberate indifference to his serious medical need. For the reasons set forth below, the Court finds that Defendant's summary judgment motion should be granted.

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Additional steps are taken when a summary judgment motion raises a defense of qualified immunity." *Cunningham v. New Mexico*, 2014 WL 12791236, at *4 (D. N.M. May 12, 2014) (citing *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right *and* (2) the constitutional right was clearly established. The court may consider either of these prongs before the other 'in light of the circumstances in the particular case at hand.'" *Cunningham*, 2014 WL 12791236, at *4 (emphasis added) (quoting *Pearson*, 555 U.S. at 236). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing

that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013) (quotation omitted).

### A. Constitutional Violation.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and **medical care**, and must 'take reasonable measures to guaranty the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (emphasis added) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Allegations of failure to provide medical care "must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)." *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (quoting *Martin v. Board of County Commissioners of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990)); *see also Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985) ("Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs.") (citing *Estelle*, 429 U.S. 97). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation and internal quotation marks omitted). "Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable." *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000). "Prison personnel 'may thus be liable

under § 1983 for indifference manifested in their response to the prisoner's needs or by intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.'" *Gray v. Sorrels*, 744 Fed. Appx. 563, 567-568 (10th Cir. 2018) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (ellipses and internal quotation marks omitted)).

"Our cases recognize two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. . . . The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. Plaintiff contends the second type applies here because Defendant denied him access to medical personnel capable of evaluating his need for treatment and failed to coordinate his care. "[T]he Tenth Circuit has recognized that conduct constituting deliberate indifference may arise in the form of 'a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition.'" *Welsh v. Bishop*, 2015 WL 1064155, at *4 (D. Colo. March 9, 2015) (quoting *Self v. Crum*, 439 F.3d 1227, 1231-1232 (10th Cir. 2006) ("A claim is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious.")). As discussed in detail below, "[t]hese claims include both an objective and a subjective component." *Gray*, 744 Fed. Appx. at 568; *see also Martinez*, 563 F.3d at 1088 ("The test for deliberate indifference is both objective and subjective.") (citing *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)).

***1. Objective Component.*** The Tenth Circuit has explained that the objective component is based on the harm claimed by the Plaintiff, and "whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause.'" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "Once the prisoner selects the harm, however, the focus of the objective prong should be solely on whether that harm is sufficiently serious." *Mata*, 427 F.3d at 753. A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 296 (1991)). "For the objective component of a failure-to-treat claim, the inquiry is whether the prisoner's 'medical need is sufficiently serious[, that is,] if it is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Gray*, 744 Fed. Appx. at 568 (quoting *Estate of Booker*, 745 F.3d at 430 (ellipsis and internal quotation marks omitted)); *see also Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) ("A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal quotation marks omitted). "When a prisoner alleges that a delay in treatment caused him pain, if 'the pain experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test.'" *Gray*, 744 Fed. Appx. at 568 (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks omitted)). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm"; this "requirement may be satisfied by

lifelong handicap, permanent loss, or considerable pain." *Hardeman v. Smith*, 2018 WL 1528160, at *8 (E.D. Okla. Mar. 28, 2018) (quotations omitted) (citing, *inter alia*, *Oxendine v. Kaplan*, 241 F.3d 1272, 1276, 1278 (10th Cir. 2001)).

As found at the dismissal stage, Plaintiff has shown his medical condition is sufficiently serious as to Defendant. Defendant understood that Plaintiff needed additional testing in the form of an MRI. Plaintiff alleges he was in considerable pain and that the delay in obtaining surgery following the MRI confirmation of injury could cause permanent damage. Furthermore, evidence shows Defendant was aware Plaintiff had a torn bicep with retraction, and that Dr. Greisman in his referral had indicated that, although the radiology report was difficult to read, Plaintiff's injury was likely time sensitive and in need of surgical intervention depending on the diagnosis. Docket No. 80, Ex. 5, p. 29. A confirmed torn bicep with retraction satisfies the objective component. *See Watson v. Corr. Corp. of Am.*, 2018 WL 1474895, at *3 (E.D. Okla. Mar. 26, 2018) ("Once the facility physician examined Plaintiff, it was determined that he needed additional testing and then surgical treatment. Therefore, the objective component of deliberate indifference has been met."). Indeed, "providing some care does not insulate a medical professional from liability when the professional delays referral to a specialist." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (10th Cir. 2023).

**2. Subjective Component.**  In contrast to the objective component, Plaintiff fails to meet his burden as to the subjective component. The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*; *see also Martinez*, 563 F.3d at 1089 ("'[T]he prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measure to abate it.'") (quoting *Callahan*, 471 F.3d at 1159). Additionally, "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of h[is] condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755 (collecting cases); *Winrow v. Stell*, 2015 WL 3645702, at *7 (W.D. Okla. March 5, 2015) ("Denying or delaying a prisoner's access to medical professionals capable of assessing or treating the prisoner's condition can establish the subjective component, particularly when unnecessary pain or a worsened condition results."). However, "[m]ere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference." *Casanova v. Ulibarri*, 2011 WL 13157058, at *6 (D.N.M. Sept. 1, 2011) (internal citations omitted). Therefore, "[t]he question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Martinez*, 563 F.3d at 1089 (quoting *Mata*, 427 F.3d at 753); *see also Whiteman v. El Paso Criminal Justice Ctr.*, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011) ("[A] general awareness of *the potential* for harm is not enough; there must be a connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed.") (emphasis added) (citing *Martinez*, 563 F.3d at 1089 n.8).

"For the subjective component[,] the prisoner must present 'evidence of the prison official's culpable state of mind. He must show that the prison official acted or failed to

-11-

act despite his knowledge of a substantial risk of serious harm.'" *Gray*, 744 Fed. Appx. at 568 (quoting *Estate of Booker*, 745 F.3d at 430). This is "akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must 'consciously disregard' a substantial risk of serious harm.' And '[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.' The fact that a serious medical need was 'obvious' could be evidence of deliberate indifference, although a 'prison official may show that the obvious escaped him' and avoid liability." *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837, 839, 842-843 & n. 8).

"Defendants will not be entitled to qualified immunity if the symptoms displayed by Plaintiff were obvious enough to warrant a finding that Defendants knew of the risk of a serious medical condition but disregarded that risk." *Marquez v. Board of County Commissioners Eddy County*, 2012 WL 12895017, at *5 (D. N.M. Dec. 3, 2012). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. . . .[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so." *Farmer*, 511 U.S. at 842-844.

Defendant contends Plaintiff has not shown an Eighth Amendment violation on this prong, and the Court agrees. The intake form referenced by Dr. Chalkin in his evaluation appears to indicate Plaintiff's injury was three months old, rather than two months old. Plaintiff contends Defendant had a duty to review and identify mistakes such as this in the

record. Plaintiff's expert asserts that Defendant's failure to correct this in the record deviated from the standard of care. Docket No. 83, Ex. 6, p. 10. Deviation from the standard of care, however, does not establish deliberate indifference. [T]he 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.' So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d at 1233 (quoting *Perkins v. Kan. Dep't of Corrections,* 165 F.3d 803, 811 (10th Cir. 1999)). The mistake as to Plaintiff's date of injury as relayed to Dr. Chalkin was out of Defendant's control.[1] The records from the appointment with Dr. Chalkin reflect that Plaintiff was told *on that day* (December 21) that surgery was too risky because they were too far out from his injury. Docket No. 80, Ex. 12, p. 7. Defendant was not present for this discussion, and the parties agree that Defendant had no obligation to follow up with Plaintiff after his appointment with Dr. Chalkin.

Furthermore, whether Defendant was aware of all Dr. Chalkin's qualifications or not (a point upon which the parties disagree), Dr. Chalkin is a board-certified orthopedic surgeon with a subspecialty in hand and upper extremity injuries, traumatic reconstruction, and tendon and nerve repair. While Defendant had experience as an athletic trainer prior to becoming a PA, any general understanding she had of treatment timelines for these types

---

[1] Plaintiff denies completing two pages of his intake form for Dr. Chalkin, despite stating that he signed a third page regarding his pain scale. Docket No. 83, p. 13, ¶ 80. However, he does not allege that Hasenmyer took any part in completing this form.

of injuries could not override Plaintiff's surgeon's actual treatment plan. Once the MRI was obtained, Defendant began that day the process of coordinating care for Plaintiff, which ultimately involved consultation with and referral to multiple locations given the complications of Plaintiff's COVID diagnosis and scheduling conflicts at various clinics around JDCC.

Plaintiff nevertheless propounds the "gatekeeper" theory of deliberate indifference, whereby he contends Defendant's role was "solely to serve as a gatekeeper for other medical personnel capable of treating the condition," *Sealock*, 218 F.3d at 1211, and that she delayed or refused to serve that role due to deliberate indifference. Failure to properly act as a gatekeeper occurs when a person "prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment." *Lucas*, 58 F.4th at 1137. "[I]t is possible to have some medical care and still state a claim under the gatekeeper theory." *Id.*, at 1139. The Tenth Circuit instructs that the proper determination on this question is "whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* Here, Defendant's actions do not cross that line. Defendant, a PA, promptly acquired a referral for Plaintiff to a board-certified surgeon who assessed Plaintiff and prescribed a specific course of treatment. There is no obligation for a PA to question a surgeon's treatment decisions under these circumstances, even if Defendant was both aware that the six-week window was critical and that there was a date discrepancy on one of the multiple documents reviewed by the surgeon. Defendant's "good faith effort" to obtain care for Plaintiff was sufficient here. *Self*, 439 F.3d at 1232. Defendant's actions do not rise to the level of a

"complete denial of care." *Lucas*, 58 F.4th 1139.

Despite the numerous setbacks in obtaining care for Plaintiff, most out of Defendant's control, Plaintiff was seen by a board-certified specialist within fourteen days of the MRI. Plaintiff agrees that Defendant was not required to follow up with Plaintiff after his appointment with Dr. Chalkin.[2] *See* Docket No. 80, p. 21, ¶ 85 & Docket No. 83, p. 13, ¶ 85. Plaintiff himself chose to refuse Dr. Chalkin's prescribed course of treatment, including physical therapy. Plaintiff's claim of deliberate indifference cannot rest on a disagreement as to diagnosis or treatment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (A Plaintiff's "difference of opinion does not support a claim of cruel and unusual punishment."). Plaintiff therefore fails to establish a constitutional violation.

### B. Clearly Established Law.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Even assuming Plaintiff established a constitutional violation, the question remaining is whether the violation was of clearly established law.

"Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct 'by identifying an on-point Supreme Court or published

---

[2] Plaintiff's response to this proposed undisputed fact admits only that Defendant did not provide Plaintiff with information regarding his visit with Dr. Chalkin but does not challenge that Defendant had no further obligations.

Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as [he] maintains.'" *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)). However, "'clearly established law' should not be defined 'at a high level of generality.'" *Pauly*, 580 U.S. at 79 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, it "must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987)). In this Circuit, "[t]he right to custodial medical care is clearly established." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Estelle*, 429 U.S. at 104); *see also Martin v. Bliss*, 2016 WL 7046766, at *4 (E.D. Okla. Dec. 2, 2016) ("[T]he Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 104 (internal quotations and citations omitted)); *Blackmon v. Sutton*, 734 F.3d 1237, 1245 (10th Cir. 2013) ("By 1997 this court had clearly held that the Eighth Amendment is offended not only by medical professionals who fail to treat, but also by prison officials who assume "gate keeping" authority over prisoner access to medical professionals.").

Even though a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm[,]" *Oxendine,* 241 F.3d at 1276 (quotation omitted), the Tenth Circuit has held "that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or

considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Plaintiff contends Defendant violated clearly established law by denying him access to medical personnel who could evaluate him for treatment. *Sealock*, 218 F.3d at 1211 ("The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."). Despite Defendant's efforts to coordinate Plaintiff's care, Plaintiff contends that Defendant's failure to find a second specialist who would perform a surgery was a violation of clearly established law. Plaintiff asserts that he is not required to show a case directly on point for a right to be clearly established, but he neglects the rest of that rule from the Supreme Court, which clarifies that such is the case only when "existing precedent must have [previously] placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Pauly*, 580 U.S. at 79). Plaintiff fails to meet his burden when he points to case law at such a high level of generality. There is no clearly established law that a PA at a jail must order a second opinion for a course of treatment where one supporting document (of many) contains an inaccuracy but the inmate has not requested one and a specialist has already set a course of treatment, nor has existing precedent placed this question beyond debate. Accordingly, Defendant is entitled to qualified immunity.

## CONCLUSION

Accordingly, the Court finds that the Defendant Hasenmyer's Motion for Summary Judgment [Docket No. 80] is hereby GRANTED. A separate Judgment will follow.

IT IS SO ORDERED this 24th day of July, 2025.

*[signature]*

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**